UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------------X
BRITTNEY ABISDID,

                Plaintiff,

Civil Action No.

THE BALDWIN SCHOOL; JOSEPH DUKE, *individually*;
MARISA PORGES, *individually*; SHERRI FARENWALD,
*individually*; and JOANNE BRASBERGER, *individually*,

**COMPLAINT**

Plaintiff Demands
a Trial by Jury

                Defendants.
------------------------------------------------------------------------X

Plaintiff, BRITTNEY ABISDID, as and for her Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her sex/gender and retaliated against by her employer for complaining of harassment and discrimination.

## JURISDICTION AND VENUE

2. This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964. This Court has supplemental jurisdiction over the State causes of action.

3. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Montgomery, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events in issue took place in the County of Montgomery, Pennsylvania within the Eastern District of Pennsylvania.

4. On or about April 25, 2017, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against Defendants as set forth herein.

5. On or around December 6, 2017, the EEOC issued Plaintiff her Notice of Right to Sue.

6. This action is being commenced within 90 days of receipt of the EEOC Right to Sue Letter.

**PARTIES**

7. Plaintiff BRITTNEY ABISDID (hereinafter also referred to as Plaintiff and "ABISDID") is an individual Black/African-American female who is a resident of the County of Montgomery within the Commonwealth of Pennsylvania.

8. At all times material, Defendant THE BALDWIN SCHOOL (hereinafter "Defendant" and/or "BALDWIN"), was and is a domestic non-profit corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.

9. At all times material, Defendant BALDWIN operated and continues to operate an all-girls school located at 701 Montgomery Avenue, Bryn Mawr, PA 19010 (hereinafter referred to as "the school.")

10. At all times material, Defendant JOSEPH DUKE (hereinafter referred to as "DUKE"), an individual white/Caucasian male, was and is an employee of Defendant BALDWIN.

11. At all times material, Defendant DUKE was and is employed as the Information Technology ("I.T.") Director at BALDWIN's campus.

12. At all times material, Defendant DUKE held direct supervisory authority over Plaintiff.

13. At all times material, Defendant MARISA PORGES (hereinafter referred to as "PORGES") was and is an employee of Defendant BALDWIN.

14. At all times material, Defendant PORGES was and is employed as the Head of School for Defendant BALDWIN.

15. At all times material, Defendant PORGES held supervisory authority over Plaintiff.

16. At all times material, Defendant SHERRI FARENWALD (hereinafter "FARENWALD") was and is employed by Defendant BALDWIN as Director of Human Resources.

17. At all times material, Defendant FARENWALD held supervisory authority over Plaintiff.

18. At all times material, Defendant JOANNE BRASBERGER (hereinafter "BRASBERGER") was and is employed by Defendant BALDWIN as Chief Financial Officer ("CFO").

19. At all times material, Defendant BRASBERGER held supervisory authority over Plaintiff.

## MATERIAL FACTS

20. On or around October 17, 2016, Defendant BALDWIN hired Plaintiff as an I.T. Support and Database Specialist.

21. From the date of Plaintiff's hiring through her date of termination, Plaintiff was the only female employee working in Defendant's I.T. department.

22. Starting soon after the beginning of Plaintiff's employment with THE BALDWIN SCHOOL, Defendant DUKE began to treat Plaintiff differently and with less respect than Plaintiff's similarly-situated male co-workers.

23. In or around early November 2016, Plaintiff began to hear rumors that she was frequently late to work.

24. In fact, on one occasion in or around early November 2016, one of Plaintiff's co-workers stated to Plaintiff that another unknown employee had stated that Plaintiff "was running on colored people time."

25. After this conversation, Plaintiff immediately made Defendant DUKE aware of the offensive comment, and explicitly stated that she felt uncomfortable at work after hearing about it.

26. In response, Defendant DUKE was dismissive of Plaintiff's concerns.

27. On information and belief, Defendant DUKE did nothing to investigate or remedy Plaintiff's concerns, and dismissed Plaintiff's report because of her sex/gender.

28. After Plaintiff brought her concerns to Defendant DUKE's attention, Defendant DUKE began acting differently towards Plaintiff.  By means of example only, Defendant DUKE would frequently act passive-aggressively towards Plaintiff after this conversation.

29. Beginning in or around November 2016, Defendant DUKE began to deliberately undermine Plaintiff's work product and reputation at the school.  By means of example only, DUKE would state without any factual basis to other faculty and staff members that Plaintiff's work was sub-standard.

30. As a consequence of Defendant DUKE's behavior, other faculty and staff members began to lose confidence in Plaintiff's ability to handle any I.T.-related requests.

31. Despite DUKE's untrue statements to the contrary, Plaintiff remained a highly capable and qualified employee during this time period. In fact, Plaintiff was told on several occasions after she began working for Defendant BALDWIN that BALDWIN's administrators had heard "nothing but good things" from other staff members about Plaintiff's work.

32. Also during this time period, DUKE would regularly ignore Plaintiff when she attempted to speak to him during the workday, and would not respond to her questions.

33. On one occasion around mid-November, Plaintiff was attempting to speak with DUKE about a work-related issue, but DUKE would not respond. When Plaintiff finally got DUKE to respond to her, he stated in words or substance that "maybe I tuned you out because you're a woman."

34. Plaintiff was highly offended by DUKE's sexist and discriminatory comment. Furthermore, Plaintiff was so shocked and offended that she was unable to form a meaningful response.

35. Accordingly, in or around mid to late November 2016, Plaintiff requested to meet privately with Defendant FARENWALD, BALDWIN's Director of Human Resources.

36. During this meeting, Plaintiff stated to FARENWALD that she felt uncomfortable working under DUKE after his sexist and discriminatory comments towards and treatment of her.

37. Despite Plaintiff's report to FARENWALD, DUKE's conduct and treatment of Plaintiff did not change after this meeting. On information and belief, FARENWALD did not properly investigate Plaintiff's complaint.

38. On or around November 29, 2016, Plaintiff fell down a set of stairs at the school and suffered a concussion, and was consequently restricted from working by her doctor for four (4) days.

39. On or around December 2, 2016, while Plaintiff was still restricted from working, FARENWALD emailed Plaintiff (with a cc to DUKE), and asked her to come into work on the following Sunday (December 4) to provide technical support for an event at the school, despite Plaintiff still being off work per her doctor's orders. In response, Plaintiff stated that she would attempt to come to event depending on her health.

40. On or around December 4, Plaintiff was still not feeling well enough to return to work ahead of when her doctor had cleared her to return. When she text-messaged DUKE to inform him of this, DUKE angrily replied "I knew you would not be in several days ago…Why do you think I didn't cancel my schedule to cover this event?"

41. On information and belief, DUKE did not speak to any of his male I.T. employees in this manner.

42. When Plaintiff returned to work in or around early December, Defendant DUKE's sex/gender-based discrimination against Plaintiff greatly increased. By means of example only, during a meeting with Defendant BRASBERGER (DUKE's direct supervisor), BRASBERGER stated to Plaintiff that DUKE had stated that Plaintiff was "a liability because of her future goals."

43. On information and belief, Defendant DUKE did not speak about any of his male employees in this manner, and did not state or believe that any of his male subordinates were "liabilities" because of their future goals.

44. Throughout December 2016 and continuing through the end of Plaintiff's employment with BALDWIN, DUKE continued to regularly ignore Plaintiff's work-related questions, and would often speak to Plaintiff in a patronizing manner when he did respond. Plaintiff would regularly text-message DUKE with questions and/or updates concerning tasks at work, yet DUKE frequently ignored, dismissed, or wholly failed to respond to Plaintiff's messages. By means of example only, in response to a question that Plaintiff asked on or around January 19, 2017, DUKE replied with "Scott [another male I.T. employee] and I have our own work to do. So we may not always be able to answer your texts and calls on demand."

45. On information and belief, DUKE was typically available to answer questions from male I.T. employees, and would generally speak to his male colleagues and subordinates with respect that he refused to afford Plaintiff.

46. In or around January 2017, Plaintiff again met with FARENWALD and BRASBERGER to speak about her discomfort working under DUKE on account of his continued sexist and discriminatory behavior and actions. During this meeting, BRASBERGER stated to Plaintiff in words or substance that DUKE "wasn't going anywhere", and failed to offer Plaintiff any assistance in dealing with the issue.

47. In or around mid-January 2017, Plaintiff once again attempted to solve the ongoing gender-based discrimination that she was suffering by meeting yet again with both DUKE and BRASBERGER to attempt to resolve the continued issues. During that conversation, DUKE attempted to argue that Plaintiff was a poor employee, stating in words or substance that he "didn't know [Plaintiff's] technical abilities."

48. On the contrary, Plaintiff did not have any issues related to technical competence while working for BALDWIN. Plaintiff's only work-related issues arose from DUKE's direct interference with and undermining of her ability to perform her job duties.

49. On information and belief, DUKE did not question the technical abilities of any of the I.T. department's male employees.

50. On or around January 27, 2017, Defendant BALDWIN terminated Plaintiff's employment. During the termination meeting with FARENWALD and BRASBERGER, FARENWALD first stated that Plaintiff was being terminated because she "was not technical enough," then abruptly changed her reasoning, stating that Plaintiff had been terminated because she had used up almost all her personal off-days. Finally, FARENWALD changed her supposed reasoning for Plaintiff's termination once more, stating to Plaintiff that her position was being eliminated and that BALDWIN was "going a different route."

51. In or around February 2017, Plaintiff learned that BALDWIN's Head of School, Defendant PORGES, had falsely stated to the school's faculty and staff that Plaintiff and BALDWIN had made "a mutual decision" to end Plaintiff's employment because of her "lack of technical skills."

52. On the contrary to PORGES' defamatory statement, as stated above, Plaintiff did not lack technical skills, and was wrongfully terminated on the basis of her sex/gender and in retaliation for consistently reporting and opposing the discrimination that she suffered on the basis of her gender.

53. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

55. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants.

56. The above are just some examples, of some of the sexual discrimination and harassment to which Defendants subjected Plaintiff.

57. Defendants have exhibited a pattern and practice of not only tolerating discrimination and retaliation, but also failing to investigate and cure the wrong once it had been reported.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint

59. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

60. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

63. Defendants retaliated against Plaintiff because she opposed and reported Defendants' unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from

employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

66. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender.

67. Plaintiff hereby states her claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION
## UNDER STATE LAW

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

70. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to and reporting of the unlawful employment practices of her employer.

## AS A FIFTH CAUSE OF ACTION
## FOR AIDING & ABETTING

**UNDER STATE LAW**

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

73. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS A SIXTH CAUSE OF ACTION FOR
DEFAMATION *PER SE* UNDER STATE LAW
(As against Defendant PORGES)**

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. 42 Pa. C.S.A. § 8343(a) provides that a plaintiff establishes a defamation claim by showing: (1) The defamatory character or the communication; (2) Its publication by the defendant; (3) its application to the plaintiff; (4) The understanding by the recipient of its defamatory meaning; (5) The understanding by the recipient of it as intended to be applied to the plaintiff; (6) Special harm resulting to the plaintiff from its publication; and (7) Abuse of a conditionally privileged occasion.

76. When Defendant PORGES stated to BALDWIN's faculty and staff that BALDWIN and Plaintiff had come to a "mutual agreement" to end Plaintiff's employment because of her

"lack of technical skills," Defendant PORGES knowingly made a false statement that besmirched Plaintiff's professional reputation by stating that not only that Plaintiff lacked the necessary skills to perform her job, but that Plaintiff had acquiesced in leaving her job with BALDWIN because of such lack of skills.

77. Defendant PORGES' statement clearly established that she was speaking about Plaintiff ABISDID's lack of technical skills, and was clearly understood as such by BALDWIN's faculty and staff when PORGES published her statement.

78. Accordingly, Defendant PORGES committed slander *per se* against Plaintiff when she made the false and harmful statement to BALDWIN's faculty and staff.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  Philadelphia, Pennsylvania           DEREK SMITH LAW GROUP, PLLC
            January 29, 2018                              *Attorneys for Plaintiff*

                                                              By: _____
                                                              Nathaniel N. Peckham, Esq.
                                                              1845 Walnut Street, Suite 1601
                                                              Philadelphia, Pennsylvania 19103
                                                              (215) 391-4790